McDougald vs. Barnard.

---

No. 28.—DANIEL McDOUGALD, plaintiff in error, *vs.* E. BARNARD & Co., defendants in error.

[1.] The lien of attachments is created by the *levy* and not the *judgment,* on attachment; and in all cases of conflicts between attachments, the one first *served* shall be *first* satisfied.

[2.] In a contest between attachments and ordinary suits, it is the *judgment* and not the *levy* which fixes the lien.

Attachment lien.   Before Judge ALEXANDER.   Muscogee Superior Court.   May Term, 1847.

Various attachments against Benjamin Hurd, had been levied on the same property at different times. That of the defendant in error was levied the 7th February, 1846, and that of the plaintiff in error, McDougald, on the 18th day of the same month. McDougald's claim being for rent, he obtained the first judgment. The money being brought into the Court below, he claimed to be first paid, because his judgment was the oldest, notwithstanding that of Barnard & Co. had been first levied.

The Court below ruled that the attachment judgment of Barnard & Co., their attachment having been first served, should be first paid; and McDougald excepted.

Jones, Benning & Jones, for the plaintiff in error, submitted the following points and authorities :

First. Among attachments, that which is first carried into judgment gains a preference over others, although they may have been first levied ;

1. Because such is the plain meaning of the words of the statute. *Prince* 34, *secs.* 7, 8. *Sec.* 8 is but a *proviso* or restraining clause on *sec.* 7, and controls it. *Dwarris on Statutes* 21, 22. And in the construction of it, the words "*any* judgment obtained by *any* creditor," are to have their full effect. 4 *Wheaton* 202.

2. But these words *must* embrace judgments by attachment, for if they do not, there is no use for *sec.* 8 ; no other judgments *could* have been affected by *sec.* 7. The intention to affect other judgments by it would have been to intend what was unconstitutional, as they are not in the *title ;* at least it is plain that *sec.* 7 does not prejudice cases proceeding by ordinary process, or cases of mortgage, or any of the great variety of other liens.

Therefore, *sec.* 8 was not needed to protect them ; but is it not most far-fetched to say it was made to protect them *exclusively ?* and the strangest language to express such meaning ?

3. If these words do not embrace judgments by attachment, many cases would be left without remedy. Suppose money is to be distributed, and there are to claim it—

First. A judgment by attachment in the Superior court ;

Second. A judgment by ordinary process, but older than that by attachment ;

Third. A judgment from a justice's court, older than that by

McDougald *vs.* Barnard.

ordinary process, but founded on an attachment younger than that in the superior court.

Now the plaintiff's construction removes every difficulty of this kind.

4. It is the policy of our legislation to give priority of lien to priority of judgment.

5. And by the dormant judgment law, *all* judgments at the same term are of equal date.   *Prince* 451, 452.

But if *sec.* 8 saves from *sec.* 7, (as defendants must say,) only ordinary process—judgments obtained " BEFORE judgment is obtained by the attaching creditor,"—then ordinary process judgments, if obtained at the *same* time with attachment judgments, are not saved, and are therefore postponed to such attachment judgments ; which is forbidden by the dormant judgment act aforesaid.

So that by their construction, this law made for *regulating attachments* postpones judgments by ordinary process, to judgments by attachment, unless the former are not only as old, but older than the latter.

6. Finally, the dormant judgment law extends to and governs this case.

Suppose two attachments, (one younger than the other,) to be levied on all of a man's property, and a suit to be commenced by ordinary process against him, and that the younger attachment and the suit by ordinary process, go into judgment at the same time, and earlier than the first attachment ; the ordinary process judgment being *older* than the first attachment judgment, would *ex concessis*, cut it out ; but, being of the same age as the younger attachment judgment, would it not by the act aforesaid be only upon the same footing with it?   If the act extends to such a case, it does to all.

Johnson, Bailey & Cooper for the defendants in error.

*By the Court.*—Lumpkin, J., delivering the opinion.

Money was brought into court arising from the sale of Benjamin Hurd's property.   Various attachments had been levied on the property at different times.   That of E. Barnard & Co., which was among the oldest, was served the 7th of February, 1846.   That of McDougald, the plaintiff in error, on the 18th day of the same month.   McDougald got the first judgment, his debt being for

rent; and the only question made before us is, whether it is the *levy* of the attachment, or the judgment obtained thereon, which fixes the lien on the fund to be distributed. The decision must depend alone upon the construction of our own statutes.

[1.] By the Judiciary act of 1799, it was the *judgment* which fixed the lien on the defendant's property, in *all* cases. Where these were of equal date, the first execution delivered to the sheriff was to be first satisfied. By the statute of 1822, (*Prince* 451,) this preference was taken away, and all judgments founded on verdicts rendered at the same term of the court, were considered, held and taken to be of equal date.

Prior to this period, to wit, in 1814, the legislature thought proper to regulate the lien of attachments, as between themselves; and this it effected by a single line. " In *all* cases the first *served* shall be *first satisfied*," was the terse and perspicuous enunciation of the law. *Prince* 34.

Had the act stopped here, there never could have been any contrariety of opinion as to its meaning. But the following section declares that " no lien shall be created by the levying of the attachment, to the exclusion of any judgment obtained by *any* creditor, before judgment is obtained by the attaching creditor." *Ib.*

In behalf of the plaintiff in error it is argued, that the words " *any creditor*," in this section, are comprehensive enough to include *attachment* creditors, and actually do embrace them. If this be so, then the two sections are in opposition to each other, and the seventh is wholly nugatory, and the lien is left just where it was in 1799, namely, to be fixed by the date of the judgment in all cases.

Let us now write out in words this fancied reading of the statute, and its absurdity will be manifest. " No lien shall be created by the levying of an attachment to the exclusion of any judgment obtained by any creditor,", [either by *attachment* or *ordinary* suit,]— " before judgment is obtained by the attaching creditor." It will be at once perceived that the antithesis is destroyed. Two classes of creditors were evidently intended to be put in contrast by the statute, namely, creditors by attachment and creditors by ordinary suit. But this design is not only defeated, but the whole sentence converted into nonsense by this false reading ; whereas, by adopting the other construction, all confusion is gotten rid of. We believe that " *any creditor*," in the eighth section, means creditors by ordinary suit, and the section will then read, " no lien shall be created by the levying of an attachment, to the exclusion of any

McDougald *vs.* Barnard.

judgment obtained by any creditor," [in ordinary suits,] "before judgment is obtained by the *attaching* creditor."

The legislature in the 7th section, for obvious reasons, having greatly innovated in cases of *attachment* upon the law of lien, making it to depend upon the *levy* instead of the *judgment*, intended by the eighth section to repel the idea that the same rule should apply to cases of conflict between *attachments* and *ordinary* judgments.

So that now, in all collisions between *attachments*, it is the levy which fixes the lien, and the one first served shall be first satisfied.

And in contests between attachments and ordinary suits, [2.] it is, as it was from 1799, the *judgment* and not the *levy* which fixes the lien.

But, it is objected that this interpretation will occasionally involve the courts in an inextricable dilemma. As, for instance, suppose an ordinary judgment were to intervene in the present case, between these attachment judgments, whose would the money be? This difficulty has occurred, and may, and probably will, arise again, in practice. It only shows that it was not foreseen when the act of 1814 was passed ; and whiie it demonstrates, perhaps, that the law is defective, it cannot control the construction. For the well-known and familiar rule is, that the argument from inconvenience may have considerable weight upon a question of construction, where the language is doubtful; for it is not to be presumed upon doubtful language, that the legislature intended to establish a rule of action which would be necessarily attended with great inconvenience. But where the language is clear, and of course the intent is manifest, the court is not at liberty to be governed by considerations of inconvenience. We leave this knot therefore, to be disentangled or *cut* at a future time, unless in the interim those who have the right should see fit to speak authoritatively upon the subject. "Sufficient unto the day is the evil thereof."

Let the judgment of the Court below be affirmed.