No. 7.—SANFORD ADAMS *et als.* plaintiffs in error, *vs.* PHILIP FITZGERALD, defendant.

[1.] At the hearing of a *certiorari* no other errors shall be insisted upon in the argument by counsel, nor decided by the Court, than those which are stated in the petition.

[2.] Affidavits of illegality are upon motion and leave had, amendable instanter, by the insertion of new and independent grounds; provided the defendant will swear that he did not know of such grounds when the affidavit was filed.

[3.] Before secondary evidence will be admitted, to show that the defendant, against whom a judgment has been rendered, and an execution issued in the Justice's Court, was not served with the summons, inquiry should be made of the present Magistrate of the district for the original papers.

[4.] When the verdict is clearly against justice, and the weight of evidence, appellate courts will seize upon any misdirection of the presiding judge, to order the case to be re-tried.

*Certiorari* in Fayette Superior Court. Decided by Judge HILL, April Term, 1853.

The record in this case presents the following facts: Philip Fitzgerald had sundry Justice's Court fi. fas. against Bennett Youngblood and Sanford Adams as endorser; which were levied on property of said Adams, who made his affidavit of illegality on the ground, among others, that no summons had ever been issued, or any copy served on him in the suit by which the fi. fas. were obtained, nor had he ever acknowledged service nor confessed judgment in that suit. At the hearing of this illegality, the defendant proposed to amend by adding, as a new ground, that the judgments were void, not being signed by the Magistrate. Before the amendment was made, the defen-

Sanford Adams *et als. vs.* Philip Fitzgerald.

dant made oath that he was not aware of these facts at the time that he had made his original affidavit.   The defendant then went on to show by the testimony of the Justice of the Peace, who should have issued the summons, and by the Bailiff of the district, that no such summons was ever issued or served. He also proved that the papers of all the Magistrates since that time had been examined, without finding any such document, except the papers of the present incumbent, and of the Magistrate who should have issued it, if issued at all.   The jury returned a verdict for defendant, and the plaintiff sued out a *certiorari* from the Superior Court.   On hearing argument, the Superior Court sustained the *certiorari*, and ordered the case to be remanded for a new trial.

To which decision the defendant excepts.

STONE, for plaintiff in error.

TIDWELL & FULLER for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

With considerable pains, we think we have succeeded in unravelling the tangled record in this case.

In 1842 nine judgments were obtained by Philip Fitzgerald, against Bennett Youngblood as principal, and Sanford Adams as endorser, in the 549th district of this State; eight of which were for $30 each; and one for $25.   Executions were immediately issued, and two of the *fi. fas.* were satisfied from the sale of a piece of land, which the record states was the property of Adams.   It seems, however, that it was the same land for which the notes were given, upon which these suits were brought.   In 1847, the balance of the *fi. fas.* were levied on a tract of land belonging to Adams.   He filed an affidavit of illegality upon several grounds : but the only one which it is necessary to notice is this, namely :—that he never was served with process, nor acknowledged service in these cases.

The illegality was returned, as it should have been, to the Court from which the executions issued; and here the litigation

was had, which laid the foundation for the present writ of error. At the hearing, Adams proposed to add an additional ground, not originally taken, and which he swore was not known to him at the time he filed the affidavit of illegality. He was allowed to make the amendment, and this is the first error assigned in the petition for a *certiorari* to the Superior Court.

The plaintiff, Fitzgerald, having offered in evidence his *fi. fas.*, and the judgments upon which they were founded, the burden was cast upon the defendant to prove a negative, to-wit: that no summonses were ever issued in these cases; and that he had never been served therewith, acknowledged service, or confessed judgment. And for this purpose he showed that he had searched various places where it was most likely these papers would be found, if in existence; and that there was no trace of them any where.

It was objected that he had not applied to Simmons, who issued the summonses and rendered the judgments; nor to Francis M. Handley, the present Justice of the Peace, who succeeded Simmons. The Court overruled the objection, and suffered secondary evidence to be introduced. Various testimony was submitted to the jury, who found a verdict for the defendant.— A *certiorari* was sued out; and upon the hearing, Judge *Hill* not only sustained it on all the grounds set forth in the petition, and ordered a new trial, but ruled in the *first* place that it was not competent for Adams to go behind the judgment in an illegality: and in the *second* place, that Adams was estopped from denying the validity of the judgments—having allowed the whole of the *fi. fas.* to be levied on his property, and two of them satisfied from the sale thereof as early as 1842.

[1.] Without expressing any opinion, ourselves, upon these points, we are clear that the opinion of our brother *Hill* was extra-judicial in respect to them. By the rules of Court, the Judges are restricted expressly in their decision, to the errors complained of in the petition for *certiorari;* and these are not of the number. *Appendix to General Index, p.* 586.

[2.] Again, we hold, there was no error in permitting the party, at the hearing, to amend his affidavit of illegality, by

Sanford Adams *et als. vs.* Philip Fitzgerald.

adding a new ground, not known to him, when the affidavit was filed. (*See Higgs vs Huson*, 8 *Geo. Rep. p.* 317.)

[3.] The failure to inquire for the original papers of John Simmons, the magistrate in whose hands the notes were placed for collection, was supplied by the deposition of Simmons, who was examined as a witness by the defendants in *fi. fa.*, for another purpose. He testified, amongst other things, that he did not know where the original papers were.

But there is one error in the judgment, in the Justice's Court; on account of which, we hold Judge *Hill* was right in ordering a new trial, and that is, the letting in by the Magistrates, of secondary proof as to the want of service, &c., before any inquiry was made of Handley, the present Justice of the Peace of the District, for the original papers. He is the successor, remotely, though not immediately, of Simmons, who issued the summonses, and rendered the judgments; and we think that all the sources of information which were accessible to the party, could not be said properly to have been exhausted, until search was made among the archives and papers of file in Handley's office, for the papers. It is made the duty, by law, of each retiring Justice, to turn over to his successor his book of entries, or a copy thereof, &c.; and it is a fair presumption that all the papers appertaining to the office will be found in the possession of the last incumbent.

[4.] Perhaps if we were entirely satisfied with the verdict, we might not feel it to be our duty to send the case to the primary tribunal on account of this omission. But we are persuaded that the preponderance of evidence is in favor of the plaintiff in execution—whereas, it ought to be decidedly the other way to set aside the judgments of a Court, and the *fi. fas.* issuing thereon; and that too, seven years afterwards, and the defendant, seeking now to get rid of them, for want of service, having acquiesced in their validity. For not to advert to any other fact, Mr. Landrum, the sheriff, who sold the land in 1842, which paid off two of the *fi. fas.*, testifies, that after he received the executions from Wood, the constable who levied them, he saw Mr. Adams, and informed him that he had them, and that

they were levied on one hundred acres of land as his (Adams') property; to which Mr. Adams replied "that it was all right; that the notes were given for the land, and he was willing that it should be sold to pay the executions". He further testified, that he was of the opinion that he showed Mr. Adams all of the *fi. fas.;* and was certain he exhibited to him a part of them.

And what is the proof upon which the defendant endeavors to evade the payment of these executions?

Mr. Simmons swears that after he received the notes for collection, he saw Youngblood, and informed him that he had them, and that he had better see Adams, and he and Adams come and acknowledge service on the summonses, and save cost; which Youngblood promised to do, and appointed a day for that purpose. That at the time specified, Adams came; but Youngblood did not attend. Witness stated to Adams that he had the notes for collection, and that he had better acknowledge service and save cost; to which Adams replied, "very well—it will be all right"—or words to that amount. That he issued summonses in said cases, but *thinks* Adams did not acknowledge service on them.

If he did not, why, I ask, did Mr. Simmons enter up judgment and issue executions against him? If estoppels by record apply to Judicial officers, it would seem that he could not be allowed to deny his official acts. Mr. Simmons will not swear positively that service was not acknowledged by Mr. Adams: which is the most reliable, his memory about the matter, which he admits to be indistinct, or his public conduct as a sworn Magistrate? If he rendered judgment against a party that was never served, he was guilty of mal-practice and gross official misconduct. The doubt of the witness, therefore, at this distance of time, more than seven years having intervened, is more than outweighed by the presumption that he did his duty. Besides, where are these original papers? It is in proof by Mr. Simmons, that he issued them. They furnish the written evidence of service. To rebut this, the strongest testimony should be required. Probability, inference and conjecture, drawn entirely from parol proof, and that of the vaguest character, are

wholly insufficient to vacate the solemn judgments of a Court. Such a practice would be dangerous in the extreme.

And what is the testimony of Archibald McEarchem, the bailiff of the district at that time? *That to the best of his recollection,* he never served either of the defendants with copies of the summonses. He admitted that he may have served the process, but if so, he had forgotten it. He is certain he never did serve the parties in these cases. He further stated that there were frequently two constables in the district, but that in April, 1842, *to the best of his recollection,* there was but one.

The act of 1850 (*Cobb's Digest,* 529) provides, that in all cases, when the error committed by the Justice's Court is an error in law, which must finally govern the case, that it shall be the duty of the Judge of the Superior Court to make a final decision on the case, without sending it back for a new trial with instructions.

And concurring, as we do, with our brother *Hill,* that in a proceeding of illegality, it is not competent for the parties to go behind the execution, and attack the judgment upon which it issued, had he for this reason arrested the case, instead of remanding it for a re-hearing, we are inclined to think that he would have been sustained.