## HARVEY v. THOMPSON.

1. When the Court of Appeals certifies to this court for decision a constitutional question, and that certificate declares that a decision of such question is necessary to a proper determination of the case, this court will not examine the record to determine whether a decision of the question is necessary to a proper determination of the case. Under the constitutional amendment creating the Court of Appeals, that is a matter to be decided by that court, and this court has no power to review a judgment of the Court of Appeals on any matter within its jurisdiction.

2. The act of August 13, 1904 (Acts of 1904, p. 100), entitled "An act providing for the situs of debts due to non-residents for purposes of attachment, and for other purposes," is not unconstitutional for the reason that it is an attempt to pass an act having extra-territorial effect. And, as applied to a case where it is sought to subject wages earned in another State by an employee of a railway company having a line of railway in that State and in this State (the wages being for services performed in the other State by a locomotive engineer who, together with his family, resided there, and being payable there), the act is not unconstitutional for the reason that it deprives such person of his property without due process of law.

Argued March 4,—Decided April 12, 1907.

The Court of Appeals has certified to this court the following question: "Is the act approved August 13, 1904, entitled 'An act providing for the situs of debts due to non-residents for purposes of attachment, and for other purposes' (found in Georgia Laws, 1904, p. 100), contrary either to the constitution of the United States or to the constitution of the State of Georgia, for the reason that the legislature of Georgia has no authority or power to pass an act having an extra-territorial effect? Also, is said act, as applied to a case where it is sought to subject wages earned in the State of Florida by an employee of a railway company having lines of railway, offices, and agents, both in the State of Florida and in the State of Georgia (the wages being earned by a locomotive engineer whose entire service was performed in the State of Florida, whose wages by contract were payable there, and who, together with his family, resided in that State), contrary to section 1, paragraph 3, of article 1 of the constitution of the State of Georgia, as embodied in section 5700 of the Code of 1895, or in violation of the clause of the constitution of the United States upon the same subject-matter?" The act referred to in the foregoing question is in the following language:

"When any suit is brought by attachment in this State against a non-resident of the State and the attachment is levied by service of summons of garnishment, the situs of any debt due by the garnishee to the defendant shall be at the residence of the garnishee in this State, and any sum due to the defendant in attachment shall be subject to said attachment." The clause of the constitution referred to in the question declares: "No person shall be deprived of life, liberty, or property except by due process of law."

COBB, P. J. (After stating the facts.)

1. This case is before us under that provision of the constitutional amendment creating the Court of Appeals which declares that when, "in a case pending in the Court of Appeals, a question is raised as to the construction of a provision of the constitution of this State or of the United States, or as to the constitutionality of an act of the General Assembly of this State, and a decision of the question is necessary to the determination of the case, the Court of Appeals shall so certify to the Supreme Court, and thereupon a transcript of the record shall be transmitted to the Supreme Court, which, after having afforded to the parties an opportunity to be heard thereon, shall instruct the Court of Appeals on the question so certified, and the Court of Appeals shall be bound by the instruction so given." Acts of 1906, p. 26; 126 *Ga.* XVIII. At the hearing of this case counsel for the defendant in error contended that an examination of the record would disclose that a decision of the constitutional question was not necessary to the determination of the case. We decline to examine the record to determine the question thus raised by counsel. Under the constitutional amendment the question as to whether a decision of the constitutional question certified is necessary to the determination of the case before the Court of Appeals is a matter to be determined by that court; and when it certifies to this court that the determination of such a question is necessary, we can not undertake to decide whether the Court of Appeals has properly determined this question. Under the constitution we have no jurisdiction of any of the other questions raised in the case; and it is impossible for us to decide whether the decision of the constitutional question is necessary, without referring to other questions raised by the record. We have no power to review a decision of the Court of Appeals on any question. The sole authority of this

court in reference to cases coming from that court to this court is to decide the questions certified to this court.

We do not intend to intimate in the slightest way that in our opinion the Court of Appeals has erred in its conclusion as to the necessity of a decision of the constitutional question. We have simply declined to examine the record as to this matter. The constitution declares that "the decisions of the Supreme Court shall bind the Court of Appeals as precedents;" but this means that the Court of Appeals, in determining a case within its jurisdiction, must respect the prior adjudications of this court. There is nothing in this provision which, under any view, authorizes the Supreme Court to review any ruling of the Court of Appeals in any case, whether it reaches this court in the form of a certified question or otherwise. The judgments of that court are binding upon the parties in the cases therein, even though the decision, in a given case, may conflict with the decisions of the Supreme Court.

2. The question as to where is the situs of intangible property, such as choses in action, for the purpose of attachment and garnishment, is one that has been the subject of numerous decisions. The conflict of opinion on the subject is distressing and hopeless. In some cases it is held that the situs, for the purpose of garnishment proceedings, is the domicile of the principal defendant, in others that it is the domicile of the garnishee, and still others that it is the domicile of the debtor or wherever he may be found and sued. 20 Cyc. 1036; Brown on Jurisdiction (2d ed.), §150. The conclusion reached by this court in its former decisions was in line with those cases which held that the situs, for the purpose of a garnishment, was at the residence of the principal defendant, that is, at the residence of the owner of the debt. *Central Ry. Co.* v. *Brinson,* 109 *Ga.* 354; *High* v. *Padrosa,* 119 *Ga.* 648; s. c. 122 *Ga.* 264; *Glower* v. *Glidden Varnish Co.,* 120 *Ga.* 983. The law recognizes a right of property in things which are intangible, such as choses in action, and the like. Property of this character, having its existence only in the contemplation of the law, can have no inherent fixed place of existence. The law may give such property a location; but wherever it may be located by the law, at the foundation of its legal location there is, at best, only a fiction. The law can not indulge the fiction except by attaching the intangible property, which is the creature of the law, to the person

of some individual. It is at this point that the courts have diverged in their conclusions, when it has become necessary to give a chose in action a location for the purpose of a proceeding in garnishment. Some have fixed this location at the residence of the principal defendant in the garnishment proceeding (that is, the owner of the debt sought to be attached), upon the theory that the intangible property follows the person of the owner. As has been seen, this is the conclusion that the judges of this court have, at different periods, uniformly reached. Other courts have reached the conclusion that, for the purpose of a garnishment proceeding, the place of the residence of the debtor owing the debt sought to be attached (that is, the garnishee) may be treated as the locus of the debt, upon the theory that the debtor is under obligation to pay his creditor, or any one representing him or claiming under him, whenever and wherever the debt may be demanded of him, in the absence of a statute or a contract regulating the place of payment. Other courts have taken the position that the question is to be determined by ascertaining whether the principal defendant could be sued at the place where the garnishment proceedings are instituted. If so, the debt is subject to the garnishment, if the garnishee is also subject to suit at that place, for the reason that the garnishment proceeding is merely a substituted suit against the principal defendant. In all of the cases, whatever the conclusion that may have been reached, it is the result of what is intended to be an application of the principles of general jurisprudence. The conflict arises from the different opinions as to the application of these general principles. This court, in the cases above cited, reached the conclusion that, under the principles of general jurisprudence, the situs of the debt for the purpose of garnishment was at the domicile of the creditor,—that is, where the owner of the debt resides,—and not at the domicile of the debtor.

The question now arises, is it within the power of the General Assembly to change the rule laid down by this court? The General Assembly, of course, has no power to declare that land and tangible personal property situated beyond the limits of this State shall be dealt with by the courts of this State as if it were located here, for the reason that some person interested therein, or having the possession thereof, or under some obligation in connection herewith, happens to be within the limits of this State.

Such property not being actually within the jurisdiction of the State, and being actually beyond its jurisdiction, and being of a class that has real existence independently of any fiction of the law, its location is where it is actually situated, and, of course, it can not be made the subject of a seizure under the process of the courts of this State. But where the property has no actual location resulting from the inherent character of the property, and its location depends upon the application of the general principles of jurisprudence as drawn from the common law, the lawmaking power of the State may provide that for certain purposes such property shall have a locus within the State whenever there is within the jurisdiction of the State a person having some relation to the property which can be treated as giving the property a locus within the State without doing violence to some constitutional right of other persons interested therein. The act in question simply changes the rule as laid down by the decisions of this court, so as to prescribe the rule which other courts had laid down as the true rule under the principles of general jurisprudence. The General Assembly has authority to change the rule of the common law, as held by this court, provided the act changing the same is not subject to some constitutional objection. On the subject now under consideration this court simply endeavored to adhere to what it understood to be the true rule derivable from common-law principles. If, for any reason, the rule thus laid down was, in the judgment of the General Assembly, not a wise rule to be followed, it was within the power of that body to change the rule in any way and to any extent that it saw proper, provided there was nothing in the new rule laid down violative of the constitution of this State or of the United States. The fact, therefore, that the act in question changes the rule laid down by the Supreme Court is, of itself, no reason why it should be held invalid. The law as announced by the Supreme Court is subject to modification or change by the General Assembly, within the limits above referred to. The sole question, therefore, is whether, without reference to the former decisions of this court, the act in question is subject to any constitutional objection.

While the former decisions of this court are supported by the decisions of other courts of high and respectable standing, the rule laid down by the act in question is one that is also supported by

courts of equally high and respectable standing. In Williams *v.* Ingersoll, 89 N. Y. 523, Earl, J., having laid down, as a general principle, that the situs of the debt, for the purposes of garnishment, is at the residence of the creditor, and not at the residence of the debtor, says, "The local laws may fix the situs of the debt at the domicile of the debtor, and under such laws it may be effectually attached against a non-resident creditor, and compulsory payment under the attachment will protect the debtor everywhere against a suit for the recovery of the same debt by the creditor." See, also, Embry *v.* Hanna, 5 Johns 101; Douglas *v.* Phœnix Ins. Co., 33 N. E. (N. Y.), 940. The act in question simply declares that the situs of the debt shall, for the purpose of attachment and garnishment, be at the residence of the garnishee in this State. We are aware that in the case of Louisville & Nashville R. Co. *v.* Nash, 118 Ala. 483, that eminent and learned jurist, Mr. Chief Justice Brickell, says, in his opinion, that legislation fixing the situs of debts different from that in which it is fixed under the principles of general jurisprudence "would be as nugatory and ineffectual to dispose of the creditor's property in the debt as would be legislation attempting to acquire jurisdiction over tangible property situated without the State." We can not concur in this view. The radical difference between the two classes of property would make legislation effectual in the case of one class which would be ineffectual as to the other class.

In Harris *v.* Balk, 198 U. S. 222, Mr. Justice Peckham says: "Attachment is the creature of the local law, that is, unless there is a law of the State providing for and permitting the attachment, it can not be levied there. If there be a law of the State providing for the attachment of the debt, then, if the garnishee be found in that State, and process be served personally upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff and condemn it, provided the garnishee could himself be sued by his creditor in that State." In that case Harris was a resident of North Carolina, and was indebted to Balk, who was also a resident of North Carolina. Epstein, a resident of Maryland, sued out an attachment in Maryland against Balk, and caused summons of garnishment to be served upon Harris, who was temporarily in Maryland. Judgment was rendered on the garnishment against

Harris by the court in Maryland.    Balk thereafter sued Harris in
North Carolina, and Harris pleaded in bar the Maryland judg-
ment and his payment thereof.    It was held that the judgment of
the Maryland court was a valid and binding judgment, and that as
Balk had notice of the garnishment in time to have appeared in
that case and pleaded any defense that he had against Epstein,
the judgment of the Maryland court was a complete defense to the
suit in the North Carolina court.    It is said in that case that the
garnishee should notify the defendant of the garnishment proceed-
ing and give him an opportunity to defend, and that failure to give
notice may, under some circumstances, be such negligence as would
prevent a garnishee from pleading the judgment against him in bar
of a subsequent suit by his creditor.    See, in this connection, Cen-
tral Law Jour. 265.    In Chicago, etc., Ry. Co. *v.* Sturm, 174 U. S.
718, it is said that there are cases both for and against the proposi-
tion that it is the duty of the garnishee to notify the defendant.
Mr. Rood, in his work on Garnishments, lays down the rule that if
the principal defendant has been personally served, or has ap-
peared, no notice need be given him of the proceedings by garnish-
ment, unless such notice is required by the statute under which
the garnishment is sued out.    Rood on Garnishment, §208.    See
also 20 Cyc. 1054.    In Morgan *v.* Neville, 74 Pa. State, 52, it is
said that a garnishee in a foreign attachment to protect himself
must give notice to his own creditor.    It does not appear, in that
case, that there was any statute requiring such notice.    In Union
Pacific Ry. Co. *v.* Smersh (Neb.), 36 N. W. 139, it is said that
even though the statute does not require the notice to be given by the
garnishee to the judgment debtor, yet the courts have power to re-
quire the notice to be given before the garnishee files his answer,
in order that the debtor may protect his rights, and, if the money
or property is exempt, have an opportunity to plead the exemption.

   The conclusion we arrive at is that if the garnishee has a resi-
dence in this State, or is temporarily here, and can be served
with process, a judgment rendered on the attachment and garnish-
ment is a valid judgment, which binds the plaintiff in attachment
and the garnishee.    Under the authorities above referred to, it
would seem that the question as to whether such judgment may be
pleaded in bar by the garnishee, in a subsequent suit by his cred-
itor against him, might depend upon the question whether there

was any fraud or collusion in reference to the garnishment proceeding, and whether the garnishee was negligent in reference to causing notice to be given to his creditor of the garnishment proceeding in order that he might defend against the claim asserted in that proceeding. These questions are not now before us. A foreign railroad company operating a line of railroad in this State and having agents and a place of doing business within the State, upon whom, under the general laws of the State, process may be served, is a resident of this State, subject to suit under the same rules and regulations where other residents may be sued. *Reeves* v. *Sou. Ry. Co.,* 121 *Ga.* 561; *Sou. Ry. Co.* v. *Grizzle,* 124 *Ga.* 739 (3). The fact that the contract under which the debt arose, sought to be garnished, is, by its terms, payable in another State, would not oust the jurisdiction of this court in a garnishment proceeding, in the event that the court had jurisdiction of the person of the garnishee. In such a case the non-resident debtor could be sued in the courts of this State by his creditor, notwithstanding the fact that the debt was payable elsewhere; the question as to the right to bring garnishment proceedings in this State being whether the garnishee is within the jurisdiction of the court and suit could have been maintained by the principal defendant against his debtor in the courts of this State. We therefore say, in answer to the question of the Court of Appeals, that the act in question is not contrary to the constitution of the United States, or the constitution of the State of Georgia, for the reason that the General Assembly has no authority to pass an act having extra-territorial effect, nor for the reason that it deprives the plaintiff of his property without due process of law.

*Fish, C. J., absent. The other Justices concur.*