### 690. LEARS *v.* SEABOARD AIR-LINE RAILWAY.

1. The act of the General Assembly approved August 20, 1906 (Acts 1906, p. 120), providing that the writ of attachment shall not be used to subject in this State wages of non-residents which have been earned wholly without the State, is applicable to proceedings pending in our courts at the time it went into effect and which at that time had not been reduced to judgment.

(a) Prior to the passage of the act of 1906 the plaintiff sued out an attachment against a non-resident, and had it levied by serving summons of garnishment on a debtor of the non-resident, who resided in this State; the answer of the garnishee admitted an indebtedness to the non-

resident for wages earned wholly without the State; this answer was traversed and came on for a hearing after the act of 1906 became effective; it was admitted that the facts set up in the answer of the garnishee were true; the justice of the peace rendered judgment against the garnishee. *Held*, that it was not error for the judge of the superior court to sustain a petition for certiorari complaining of this judgment.

(*b*) When a statute is capable of two constructions, one making it violative of the constitution, and the other making it consonant therewith, the latter construction will, if possible, be adopted. In holding that the above statute was intended to apply to pending proceedings which had not reached final judgment, the constitutionality of the law is not imperiled upon the ground that such a construction makes it interfere with vested rights; because, until final judgment against the garnishee, the plaintiff does not acquire a vested right to the funds impounded.

2. At the hearing of a certiorari, no other errors shall be insisted upon in the argument by counsel, or passed upon by the court, than those which are stated in the petition and answer.

(*a*) A statement in the answer of the justice, that "it was urged by the counsel for defendant in certiorari . . that said act was unconstitutional," is not sufficient to invoke a ruling by the judge of the superior court as to the constitutionality of the statute.

(*b*) It was proper for the judge of the superior court to refuse to consider a special request, filed by counsel for the defendant in certiorari at the hearing in the superior court, containing various grounds of attack on the constitutionality of the statute, inasmuch as such a document was not a part of the petition or answer.

3. Where it is apparent that the question as to the constitutionality of an act of the General Assembly was not properly made in the court below, this court will not certify such question to the Supreme Court for instruction.

Certiorari, from Fulton superior court—Judge Pendleton. May 31, 1907.

Argued November 25, 1907.—Decided February 14, 1908.

*E. S. Lumpkin,* for plaintiff.

*W. Carroll Latimer,* for defendant.

RUSSELL, J. In June, 1906, Lears sued out an attachment in a justice's court in Atlanta against Causey, a non-resident, and had the same levied by serving summons of garnishment on the Seaboard Air-Line Railway. In July the garnishee answered that it was indebted to the defendant for wages earned, due, and payable in the State of North Carolina. At the hearing which took place in November, 1906, the grounds of the attachment, and also the facts set forth in the answer of the garnishee, were admitted to be true. The garnishee relied on the act of the legislature approved August 20, 1906 (Acts 1906, p. 120), by which the act of 1904

(Acts 1904, p. 100) was amended so as to read as follows:     "Be-
it enacted by the General Assembly of the State of Georgia, that
from and after the passage of this act, when any suit is brought by
attachment in this State against a non-resident of the State, and
the attachment is levied by service of summons of garnishment, the
situs of any debt due by the garnishee to the defendant shall be at
the residence of the garnishee in this State, and any sum due to
the defendant in attachment shall be subject to said attachment;
*provided,* that the writ of attachment shall not be used to subject
in this State wages of persons who reside out of the State, and
which have been earned wholly without the State of Georgia." The
amendment made by this act was the addition of the words con-
tained in the proviso. The justice of the peace decided that the
amendment of 1906 was not applicable to cases which were pending
at the time of its passage, and entered judgment against the gar-
nishee. The garnishee sued out certiorari. The bill of exceptions
to this court complains of the judgment of the superior court sus-
taining the certiorari.

The controlling question before this court is whether or not
the legislature intended the amendment of 1906 to apply to cases
pending at the time of its passage and approval, but which at that
time had not been reduced to judgment. A correct answer to this
question necessitates a consideration of the state of the law at the
time the amendment was passed, and the mischief which it was
intended to prevent or remove. "For this purpose the court should
put itself in the place, at the time of its enactment, of the legisla-
ture which passed it, investigating the then existing state of the
common or statutory law on the subject, contemporaneous cir-
cumstances, and the external or historical facts which led to its
enactment, and make such application of the provisions of the
statute as will best promote the object of the legislation." 26 Am.
& Eng. Enc. Law (2d ed.), 632; *Erwin* v. *Moore,* 15 *Ga.* 361;
Western & Atlantic R. Co. *v.* State of Georgia (W. & A. Railroad
Commission, 1891), 14 L. R. A. 446 (6); United States *v.*
Union Pac. Ry. Co., 91 U. S. 71 (2 L. ed. 224); People *v.* Co-
lumbia County, 134 N. Y. 13 (31 N. E. 322). What, then, was
the condition of our law at the time of the passage of the amend-
ing act of 1906, and what was the mischief which it was intended
to prevent or remove? Our Supreme Court had, by repeated de-

cisions, established the rule that the situs of a debt for the pur-
poses of garnishment was at the domicile of the creditor, and that
such debt could not be attached in this State. *Central Ry. Co.*
v. *Brinson,* 109 *Ga.* 354 (34 S. E. 597, 77 Am. St. R. 382). For
the purpose of changing this rule, the General Assembly passed
the act which was approved August 13, 1904 (Acts 1904, p. 100),
the effect of which was to change the rule which had previously
existed. *Harvey* v. *Thompson,* 128 *Ga.* 147 (2),. (57 S. E. 104,.
9 L. R. A. (N. S.) 765). The remedy given by this statute denies
to non-resident wage-earners the exemptions which are accorded to
our own citizens. For example, the "monthly wages of a loco-
motive engineer" who is domiciled in Georgia are exempt from
the process of garnishment *Smith* v. *Walker,* 119 *Ga.* 615 (46
S. E. 831) ; but if the locomotive engineer happens to be a non-
resident, engaged exclusively in work beyond the borders of Geor-
gia and residing in a sister State with his family, his creditors
in that State can come into our courts and subject his wages to
the payment of any debt. *Harvey* v. *Thompson,* supra. In other
words, this statute creates a remedy which can be used by non-
residents for the collection of debts contracted, due, and payable
in other States, and owing to them by citizens of such States,
when no such remedy is afforded by their domestic law. Harris
v. Balk, 198 U. S. 215 (25 Sup. Ct. 625, 49 L. ed. 1023). For
instance, wages which are exempt from garnishment in Florida
where they are earned, due, and payable, are not exempt in a suit
in our courts by a Florida creditor against a Florida debtor. *Har-
vey* v. *Thompson,* 2 *Ga. App.* 569 (59 S. E. 11). While such a
law is undoubtedly constitutional (Harris v. Balk, supra), it is,
when applied to non-resident laborers, a harsh exercise of legis-
lative power, and, if left unrestricted, would have the effect of
making the courts of this State a forum for the collection of debts
owing by non-residents to non-residents where the lex loci did not
afford a remedy. Rood on Garnishment, §104 et seq. Such were
the conditions when the amendment of 1906 was passed. Can it
be doubted that the purpose of the legislature in enacting this
amendment was to prevent and remove the particular evil, or pos-
sibility of evil, above pointed out in the original statute? It was
no doubt felt by the legislature that the law of 1904 was too broad
and too harsh as to non-resident laborers, and that it would be

more in accord with comity and justice to protect the wages of such laborers from the grasping hand of creditors.' It has been said that the object of exemption laws is to guard against the "readiness of men to make contracts which may deprive them and their families of articles indispensable to their comfort, . . and to promote the comfort of their families and protect them against the improvidence of their head." Per Denio, J., in Kneetle *v.* Newcomb, 22 N. Y. 249, 253 (78 Am. Dec. 186), cited in *Traders Investment Co.* v. *Macon Ry. & Light Co., 3 Ga. App.* 125 (59 S. E. 454, 457). The act of 1904 failed to recognize that the families of laborers in our sister States need protection, and failed to provide for them any exemption whatsoever; the amendment of 1906 is purely remedial, and was passed by our legislature for the purpose of according to non-resident laborers protection under our law, in line with the protection which is accorded to our own laborers. Two years' experience under the original law convinced the legislature that it was defective, and the amendment was passed for the purpose of curing the imperfection.

This being so, the question recurs as to whether the legislature intended that the amendment should apply to pending suits which had not reached final judgment. It is a general principle of statutory construction that remedial legislation will be so construed as to include, if possible, all cases within the mischief intended to be remedied (2 Lewis's Sutherland on Statutory Construction (2d ed.), §519); and where it can be done without violence to the legislative intention, such statutes are held applicable to pending proceedings. Sidway *v.* Larsen, 58 Ark. 117 (23 S. W. 648); Windsor *v.* DesMoines, 110 Iowa, 175 (81 N. W. 476, 80 Am. St. Rep. 280); Surtees *v.* Ellison, 9 Barn. & Cress. 750 (19 E. C. L. 749); New London R. Co. *v.* B. & A. R. Co., 102 Mass. 386, 389. As Lord Tenderden says, in the case of Surtees *v.* Ellison, supra, "It has long been established that when an act of Parliament is repealed, it must be considered (except as to transactions past and closed) as if it had never existed." In the case of Madigan *v.* B. & L. Asso., 73 Md. 317, 321 (20 Atl. 1069), the Supreme Court of Maryland holds that "the bringing of suit vests in a party no right to a particular decision; and his case must be determined on the law as it stands, not when the suit

was brought, but when the judgment was rendered." A statute of Michigan imposed the duty on railroad companies to erect and maintain fences along the lines of railway in that State; and, in case of a neglect of this duty, made such companies liable in double the amount of damages to property which had been injured as a result thereof. While the statute was in force, the plaintiff's horse strayed on the track of the defendant railroad company, and was killed. He sued under the above statute, and, pending the suit, but before final judgment, the statute was repealed. It was held by the Supreme Court of that State that the statute was applicable to the plaintiff's action, and that therefore he was entitled to recover only the amount of damages which he had actually suffered. Bay City etc. R. Co. v. Austin, 21 Mich. 390. See also Nations v. Lovejoy, 80 Miss. 401 (2), (31 So. 811); Miller v. Hageman, 114 Iowa, 195 (86 N. W. 281). In Endlich on the Interpretation of Statutes, §479, after laying down the well-recognized rule that penal statutes are applicable to pending proceedings, where no constitutional right of the individual is violated, the author says: "And the same rule applies to all proceedings, whether civil or criminal, going on by virtue of the statute at the time of the repeal. Wherever the jurisdiction exercised in proceedings depends wholly upon statute, and the statute is repealed, or expires by its own limitation, the jurisdiction is gone; and with it the whole proceeding, imperfect at the time of the repeal or expiration, falls to the ground, unless there be a reservation as to pending rights or causes. . The same rule applies as to rights or remedies founded solely upon statute, and to suits pending to enforce such remedies. If, at the time the statute is repealed, the remedy has not been perfected, or the right has not become vested, but still remains executory, they are gone." Such has been the holding of the Supreme Court of Minnesota as to a mechanic's lien. The plaintiff had given notice and filed his petition for a lien as prescribed by statute, but, before the lien had been perfected by judgment, the statute was repealed without a saving clause. It was held that the statute was applicable to the plaintiff's case, and that his lien was lost. The court says: "The lien of the mechanic, builder, or materialman, upon the building and real estate, does not arise out of his contract, but depends upon the statute alone for its existence. It is a preference

which he may secure if he proceeds in a particular way; but if, before he has fully perfected these proceedings, the legislature sees proper to repeal the law, he really loses nothing—he is merely unable to secure an advantage which, without the statute, he is in no wise entitled to. . . This doctrine has repeatedly been applied to mechanic's liens, and even to cases of attachment where property has actually been seized but the law repealed before judgment was perfected." But it is useless to multiply the authorities; they are all one way.' This fact was recognized by the Supreme Judicial Court of Massachusetts, in the case of New London R. Co. *v.* B. & A. R. Co., 102 Mass. 386, 389, where, in holding a repealing statute applicable to pending suits, the court says: "A statute which wholly repeals an earlier one, . . without any saving clause, makes it ineffectual to support any proceeding . . pending at the time of its passage, and not already prosecuted to final judgment. The books are so full of cases illustrating this principle that the only difficulty is in making a selection." See also, Schooner Rachael *v.* United States, 6 Cranch 329 (3 L. ed. 239); Tivey *v.* People, 8 Mich. 128; City of Detroit *v.* Chapin, 108 Mich. 136, 143 (66 N. W. 587, 37 L. R. A. 391) Town of Belvidere *v.* Warren R. Co., 34 N. J. L. 193 (3); Hampton *v.* Commonwealth, 19 Pa. St. 329; 1 Lewis's Suth. Stat. Constr. (2d ed.) §282.

It is true that many of the statutes referred to above relate to ordinary suits, and not to suits begun by attachment; but the underlying principle is the same. Statutes altering, changing, or affecting remedies and regulating the procedure of the courts generally are applicable to pending suits, however begun, unless such statutes contain a saving clause. Attachment and garnishment statutes furnish no exception to this rule. The Supreme Court of Washington has been called upon to decide the exact question now before this Court. In the case of Wooding *v.* Bank, 11 Wash. 527 (3), (40 Pac. 223), it was held: "Where a law giving a right to garnishment proceedings has been repealed subsequent to the commencement thereof, and the repealing act contains no saving clause, the effect of the repeal is to quash pending proceedings." To the same effect is the holding of the highest court in the State of Wisconsin. In the case of Freiburg *v.* Singer, 90 Wis. 608, 611 (63 N. W. 754), the court says: "The plaintiffs had

not acquired, by the service of the garnishee process, any right to the remedy they had invoked which could not be taken away from them by the act in question. The remedy was given by statute;. and until the proceedings had passed into judgment, the legisla-- ture might change it or take away the right of action altogether." The learned Chief Justice of the Supreme Court of Alabama,. speaking for his court, says: "The repeal .of a statute upon the very day judgment is rendered in a proceeding commenced under its provisions puts an end to such suit. . . The present is a purely statutory remedy. Without statutory authority, the remedy in the form invoked did not exist. It was framed in reference to, the provisions of the code, but before judgment it has ceased to, exist." Turnipseed v. Jones, 101 Ala. 593, 597 (14 So. 377).. See also Stephenson v. Doe, 8 Blackf. (Ind.) 508 (46 Am. D. 489).

It is argued, however, by the counsel for the plaintiff in error, that the attachment and the summons of garnishment gave the· plaintiff a vested right to the fund in the hands of the garnishee at the time of the answer, and therefore, to hold that the legisla-- ture intended by a subsequent act to divest this right would be in effect attributing to the legislature an intention to pass a statute· of doubtful constitutionality. It is unquestionably true that there is a presumption in favor of an intention to pass a constitutional statute, and where a statute is capable of two constructions, the court should, if possible, adopt that construction which will least imperil the constitutionality of the law. *Park* v. *Candler,* 113 *Ga.* 647 (3), (39 S. E. 89). But in holding that the amendment in the case at bar applies to pending proceedings, this court does not make the law of doubtful constitutionality. The levy of an attachment does not give a vested right to the fund attached. McFadden v. Evans-Snider Co., 185 U. S. 505 (22 Sup. Ct. 758, 46 L. ed. 1012). It appears from the above case that a law of Indian Territory required chattel mortgages to be recorded in the county where the mortgagor resided, but made no provision for recording such mortgages when given by a non-resident. A resident of Texas gave a mortgage on certain cattle pasturing in Indian Territory, and the mortgage was recorded in the county where the mortgagor resided in Texas, and also in the judicial district in Indian Territory in which the cattle were pasturing. After an attachment had been levied upon the cattle, and after judg--

ment by default against the mortgagor, sustaining the attachment as to him, Congress passed a curative act providing that chattel mortgages could be recorded in the judicial district in which the mortgaged property was situated, and validating the mortgages which had been previously so recorded. After the attachment had been issued against the property, the mortgagees interpleaded and claimed the first lien on the property; and this issue was pending at the time the curative act was passed. It was held by the Supreme Court of the United States that the levy of the attachment gave no vested right to the property attached, and that the mortgagees had the prior lien by virtue of the curative act. In Rood on Garnishment, §11, it is said: "Inasmuch as garnishment statutes create no new rights or liabilities, and are purely remedial, they are not retroactive when applied to suits commenced after the passage of the act, though relative to former transactions. A person does not, by commencement of suit under them, acquire a vested right to pursue the statutory remedy, and therefore the legislature may deprive the plaintiff of the benefits of his garnishment by changing or repealing the law at any time before he has reduced it to judgment." In Steers *v.* Kinsey, 68 Ark. 360, 368 (58 S. W. 1050), the Supreme Court of the State of Arkansas, relatively to this point, says: "The only question that remains, then, is whether the parties who brought the attachment suits acquired vested rights in the land by the bringing of the suits and the levy upon the lands. Now, a vested right 'must be something more than a mere expectation based upon the anticipated continuance of existing laws. It must have become a title, legal or equitable, to the present or future enjoyment of property,' in some way or another. Black on Const. Law 430; Suth. Stat. Const. §164. But parties have no vested rights in remedies or matters of procedure, and we see nothing in these attachment proceedings that constitutes a vested right on the part of the plaintiffs therein to the property attached." See also Madigan *v.* B. & L. Assn., 73 Md. 317, 321 (20 Atl. 1069); *Ball* v. *Mapp,* 114 *Ga.* 349, 352 (40 S. E. 272). The right which a plaintiff acquires by service of summons of garnishment is inchoate, and does not become fixed and vested until judgment is entered up against the garnishee. "Rights dependent on a statute and still inchoate, not perfected by final judgment or reduced to possession, are lost

by repeal or expiration of the statute." 1 Lewis's Suth. Stat. Const., supra, §283. The Supreme Court of Illinois, with regard to such rights, says: "We believe the rule is well settled that, as to inchoate rights, rights not carried into judgment, and so not executed, can not be, and are not, saved, in the absence of a saving clause in the repealing statute. The doctrine is that inchoate rights, derived under a statute, are lost by its repeal, unless saved by express words in the repealing statute. . . . The effect of a repealing statute is to obliterate the prior law as completely from the records as if it had never passed, and it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted, and concluded while it was an existing law." Van Inwagen v. City of Chicago, 61 Ill. 31, 34. See also Bacon v. Savannah, 105 Ga. 62 (31 S. E. 127); Baker v. Smith, 91 Ga. 142 (16 S. E. 967). In the latter case our Supreme Court held, that "where a statute provided that an amendment to an execution which had been levied would cause the execution to fall, and the legislature repealed the statute and declared that a levy should not fall if the execution was amended, the repealing act applied as well to cases which were pending at the time of its passage as to those which arose afterwards. It did not deprive the defendant in execution of any substantial right, but only regulated the procedure of the court, in which he could acquire no right." At common law a cause of action for personal injuries died with the person injured. This was the law of Georgia until 1889, in which year the legislature enacted that such suits should not abate by the death of either party. It was held that this act was applicable to suits which had been filed previous to the passing of the statute, but which had not been reduced to judgment. Pritchard v. Savannah R. Co., 87 Ga. 294 (13 S. E. 493, 14 L. R. A. 721). Judge Lumpkin, delivering the opinion in that case, says: "It is not unconstitutional for the legislature to take away a right which is not vested, but contingent upon some event subsequent to the date of the statute. Before the occurrence transpires upon which an inchoate right is to become vested and unalterable, a law may be passed providing, in effect, that the happening of such occurrence shall not make that right complete. . . 'The presumption against a retrospective construction has no application to enact-

ments which affect only the procedure and practice of the courts, even where the alteration which the statutes make has been disadvantageous to one of the parties.' . . 'Any statute which changes or affects the remedy merely, and does not destroy or impair vested rights, is not unconstitutional, though it be retrospective, and although in changing or affecting the remedy the rights of the parties may be incidentally affected.'" So it is in the case at bar; the statute merely affects or alters the remedy for the collection of debts. The right of Lears to subject tangible property belonging to Causey in the hands of third persons residing in this State, or debts owing to Causey by residents of this State, other than debts for wages earned wholly without the State, is not altered by the amending act of 1906. The original act of 1904 merely gave a remedy for the enforcement of an existing right, and did not create a right. Rood on Garnishment, §11. The amendment of 1906 merely withdrew in part this remedy, and left the right unimpaired. See also *Mills* v. *Geer*, 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934). The repeal of the statute before the plaintiff had pursued his remedy to judgment did not deprive the plaintiff of a vested right, but merely deprived him of a remedy which for its existence depended wholly upon the statute; after the statute was repealed this remedy had no legal existence. Not having a vested right in the remedy, the law abolishing the remedy did not deprive him of such a right.

But it is said that the very words of the amendment show that the legislature intended that it should not apply to pending suits, because the language used is: "the writ of attachment shall not be used to subject in this State wages of persons who reside out of the State," etc. The contention is, that in proceeding with his suit the plaintiff in attachment is not violating this law, because at the time it became effective he had already used the writ of attachment; that as to him the writ was functus officio, and in pursuing his suit to judgment he does not in anywise need to make use of the writ of attachment. This argument is ingenious, but unsound. As has already been said, the purpose of the act was to grant to non-resident laborers an exemption. Until such wages have been subjected, the laborer or the garnishee can plead the exemption. Prior to judgment against the garnishee the wages were not subjected, but were merely in the process of

subjection. Furthermore, the levy of the attachment by service of summons of garnishment created a lien (Civil Code, §§ 4549, 4578; *McDougald* v. *Barnard, 3 Ga.* 169) which generally would continue until judgment against the garnishee, the judgment having the effect of subjecting the property levied upon. Civil Code, § 4719; *Willis* v. *Parsons, 13 Ga.* 335. But in the case under consideration, before such judgment had been rendered, the remedy creating the lien, and upon which alone it depended for its existence and continuance, had been abolished, and therefore the lien itself fell. Therefore, the writ of attachment was not functus officio until judgment, but was being used to keep in life the lien; and if the plaintiff is allowed to proceed with his suit, he would be making use of the writ of attachment for the purpose of subjecting the wages of a non-resident laborer in direct violation of the statute. The question of the sufficiency of the attachment judgment to subject the funds does not arise until that judgment is offered as a basis for a final judgment against the garnishee. *Ingram* v. *Jackson Merc. Co., 2 Ga. App.* 218 (58 S. E. 372); *Nashville Ry. Co.* v. *Brown, 3 Ga. App.* 561 (60 S. E. 319).

Inasmuch, therefore, as it was the evident intention of the legislature to limit and curtail the remedy which had been granted by the statute of 1904, by exempting wages of non-resident laborers from garnishment where such wages have been earned wholly without the State; and inasmuch as this legislative intention can be best effectuated and the mischief intended to be cured best removed by holding that the amendment is applicable to pending suits not reduced to judgment; and inasmuch as such a construction does not in any way imperil the constitutionality of the law; it follows, as a matter of course, that the learned trial judge did not err in holding that the statute was applicable to the plaintiff's case, and in sustaining the certiorari and entering a final judgment holding the fund garnished to be not subject.

2. The plaintiff in error attempts to assail the constitutionality of the amendment of 1906, and in both the bill of exceptions and in his brief states many reasons why in his opinion the aforesaid amendment violates the constitution of the State of Georgia and the constitution of the United States. The record, however, is not in a proper state for a consideration of these questions. This case originated in a justice's court and was carried by certiorari

to the superior court. The petition for certiorari in no way recites that the constitutionality of the law was brought in question in the justice's court; nor does it appear from the assignments of error therein that the judge of the superior court had an opportunity to legally pass upon the constitutionality of the law. The answer of the justice was incomplete, and counsel for both parties agreed to a statement of facts supplementing it. From this agreement, which was allowed and ordered filed as a part of the answer, it appears that "it was urged by the counsel for the defendant in certiorari . . that said act was unconstitutional;" but this is insufficient to raise the question. It does not appear from the petition for certiorari, nor from the answer, upon what grounds the constitutionality of the act was questioned; and the judge of the superior court could not legally consider any other documents. *Gildea* v. *Hill,* 115 *Ga.* 136 (41 S. E. 492). In the case of *Jones* v. *Oemler,* 110 *Ga.* 202 (2), (35 S. E. 375), the Supreme Court of this State held: "An attack upon the constitutionality of an act of the General Assembly, based on the grounds that 'it contains matter different from what is expressed in the title thereof, and refers to more than one subject-matter,' without further specification, is too vague and indefinite for consideration by a court. The same is true of an attack alleging in general terms that the act 'is invalid and unconstitutional.'" See also the case of *Savannah etc. Ry. Co.* v. *Hardin,* 110 *Ga.* 433, 437 (35 S. E. 681), where Justice Cobb, speaking for the court, says: "While the constitution declares that legislative acts in violation of its provisions are void, and the judiciary shall so declare them, it is well settled that a legislative act should not be declared unconstitutional unless the point that the act is unconstitutional is squarely made in the case. From this it necessarily follows that this court should never pass upon the constitutionality of a legislative act unless it clearly appears in the record that the point was directly and properly made in the court below and distinctly passed on by the trial judge. . . Not until this question is raised in a proper way in the court below and there decided by the trial judge will this court feel justified in passing upon the question as to whether the acts referred to are in violation of the constitution." See also *Roberts* v. *Keeler,* 111 *Ga.* 183, 185 (36 S. E. 617).

From what has already been said, it necessarily follows that the judge of the superior court properly refused to consider the special request filed by counsel for defendant in certiorari at the hearing, containing various reasons why the act in question appeared to counsel to be unconstitutional. The judge of the superior court, in certifying the bill of exceptions to this court, states that he did not consider this document a part of the record. The correctness of his ruling on this point is beyond question. "At the hearing of a certiorari no other errors shall be insisted upon in the argument by counsel, nor decided by the court, than those which are stated in the petition." *Adams* v. *Fitzgerald,* 14 *Ga.* 36. See to the same effect the case of *Gildea* v. *Hill,* supra, in which it is said: "At the hearing of a certiorari in the superior court, nothing can be considered by the judge but the petition and answer. It follows that it was not error for the judge to refuse to consider affidavits by members of the jury to the effect that they had not read or considered the paper improperly carried into the jury room." This rule has been repeatedly recognized and emphasized by the Supreme Court, and is now embodied in the Civil Code, §4650, as follows: "No ground of error shall be insisted upon, on the hearing [of a certiorari], which is not distinctly set forth in the petition." In the light of the foregoing decisions, it would be useless for us to certify the constitutional questions to the Supreme Court. *Griggs* v. *State,* 130 *Ga.* (60 S. E. 103). If the plaintiff in attachment desired to assail the constitutionality of this law, he should have raised the point in the justice court, and then should have had the grounds upon which he claims that the law is unconstitutional clearly stated in the answer to the writ of certiorari, even if exceptions to the answer were necessary for the purpose of bringing up the point. Since he failed to do so, the judge of the superior court could not properly pass upon the constitutional questions. Obviously therefore these questions can not properly be made the foundation of assignments of error in the bill of exceptions sued out for the purpose of bringing the case to this court. *Fouché* v. *Morris,* 112 *Ga.* 143 (2), 145 (37 S. E. 182). When the question as to the constitutionality of the amendment of 1906 is properly made and it is apparent that a decision of such question is necessary to a proper determination of the case, this court will

certify the question to the Supreme Court for instruction. No such question, however, is made by the record in the present case. The judge of the superior court committed no error in sustaining the certiorari.                          *Judgment affirmed.*