## 616. TRADERS INVESTMENT COMPANY *v.* MACON RAILWAY AND LIGHT COMPANY.

Under the laws of this State, the wages of all journeymen mechanics and day-laborers are not subject to process of garnishment. A contract, either specific or general, by which a debtor attempts to waive this exemption and to make his wages, earned as a laborer, subject to garnishment is void and not enforceable.

Certiorari, from Bibb superior court—Judge Felton. January 10, 1907.

Submitted October 30,—Decided November 25, 1907.

*R. S. Wimberly,* for plaintiff.

*M. R. Freeman, Roland Ellis,* contra.

POWELL, J. The garnishee answered that he was indebted to the defendant, but that the money was not subject to garnishment, because it was for wages earned by the defendant as a laborer. A part of the contract upon which the plaintiff sued was the following agreement signed by the defendant: "For and in consideration of the above note, and as against this debt, I expressly and specially waive all exemption from garnishment to which, under the constitution and laws of Georgia, I may be entitled, relative to the wages I may earn in the employ of the Macon Railway & Light Company, as a dispatcher, between the 1st day of March, 1906, and the first day of July, 1906. I hereby authorize and request the Macon Railway & Light Company to recognize and comply with the specific waiver of garnishment in the sum of $42 out of said wages, between the first day of March, 1906, and the first day of July, 1906, made in favor of the said Traders Investment Company. And I further request the Macon Railway & Light Com-

pany not to set up any right of exemption or garnishment as defense in any proceeding or suit of garnishment which may be brought against me by the Traders Investment Company for the recovery of the above indebtedness, in case I should fail to meet said obligation promptly." The magistrate before whom the original hearing occurred held that this contract precluded the defendant and the garnishee from pleading an exemption of the wages from process of garnishment. The superior court, on certiorari, held this to be error and ordered a new trial. The case comes here on exception to the ruling last mentioned.

While our Supreme Court long ago held that a general waiver of exemption from garnishment was ineffectual, it expressly left open the question whether a special waiver, such as the one sub judice, would be valid and enforceable (*Green* v. *Watson, 75 Ga.* 471, 45 Am. R. 479), and this precise question has never as yet been decided by our Supreme Court. However, on January 20, 1904, in the superior court of Fulton county, in the case of Peter Mills *v.* Charles Colyer, the presiding judge, Hon. Joseph Henry Lumpkin, now a Justice of our Supreme Bench, rendered a decision on this subject, and gave in connection therewith an exhaustive opinion which was noted and favorably commented upon by both the secular press and the law periodicals throughout the country. See 10 Case and Comment, 102; 7 Law Notes, 232. This opinion has never been officially published, and it is so able and so conclusive upon the subject that we feel that we can do the members of the profession who are interested in this question no better service than to incorporate herein, and adopt as our own, so much thereof as is material to the case under consideration. Omitting parts not germane here, Judge Lumpkin's opinion is as follows:

"Under the agreement upon which the case was tried, there is but one question to be decided. Conceding that Mills was a laborer, within the meaning of the statute, and that the fund sought to be subjected was due him for such wages as were not subject under the law, was it rendered subject by reason of the waiver contained in the instrument above set out? Counsel for Colyer contends that the waiver of exemption of wages was lawful and valid, and that under it the wages due Mills could be subjected. Counsel for Mills contends that such waiver was contrary to public policy and did not prevent Mills from claiming such wages as ex-

·empt from garnishment. A very brief reference to the history of the garnishment laws of this State may throw some light upon the legislative purpose in regard to the exemption of wages. On February 18, 1799, an act was passed entitled 'An act to regulate attachments in this State,' and in the second section thereof provision was made for serving a summons of garnishment based upon an attachment proceeding. This act was amended on November 22, 1814, December 16, 1816, and December 8, 1820. On December 23, 1822, an act was passed entitled 'An act to authorize parties plaintiffs to issue summons of garnishment in certain cases, as in cases of attachments;' and this was amended on December 20, 1823. Several other amendments were made to the attachment and garnishment laws from that date to February 21, 1850. These various acts will be found in Cobb's New Digest, pages 69 to 88 inclusive. Only one of them need be set forth as bearing directly on the question in issue.

"On December 27, 1845, an act was passed entitled 'An act to exempt journeymen mechanics and laborers in this State from garnishment of their wages,' which provided, that, 'from and after the passage of this act, all journeymen mechanics and day-laborers shall be exempt from the process and liabilities of garnishment on their daily, weekly, or monthly wages, whether in the hands of employers or others.' Cobb's Dig. 88. On August 23, 1872, an act was passed entitled 'An act to amend the garnishment laws of this State." It provided, that, 'from and after the passage of this act, the wages of no person in the employment of another shall be exempt from the process of garnishment when the consideration of the debt is provisions for the use of the employee or his family, or when the consideration of such debt is for the board of himself or family.' Acts 1872, p. 43. On February 24, 1875, an act was passed entitled 'An act to amend section 3554 of the Code of 1873.' It provided, that, 'from and after the passage of this act, section 3554 of the Code of 1873 be and the same is hereby amended, by adding to the proviso of said section the following words, to wit, "or when the consideration of said debt is services rendered by any physician, or surgeon, . . druggist, or apothecary, to said employee or his family."' On February 7, 1876, an act was passed entitled 'An act to exempt from process of garnishment the wages of journeymen mechanics and day-laborers.' It provided, that,

"from and after the passage of this act, all journeymen mechanics and day-laborers shall be exempt from the process and liabilities of garnishment on their daily, weekly, or monthly wages, whether in the hands of their employers or others, provided that this act shall in no way affect, or operate upon, contracts made prior to the passage of the same.' And this identical language (omitting the proviso) was incorporated into the Code of 1882 (§3554) and the Code of 1895 (§4732). It will thus be seen that after temporarily allowing the wages of laborers to be garnished for certain debts, this permission was repealed, and the legislature returned to and re-enacted the act of 1845, completely exempting such wages from garnishment. And the right to garnishment depends on the statute.

"The exemption thus created did not provide for a privilege to be exempt upon doing certain things, or taking certain action, but was a positive statutory exemption, complete and perfect in itself; and to obtain its benefits, when he set up a claim to exemption, the laborer had nothing more to do than to show that he was of the class described and point to the law itself. In such a case, can the laborer, by executory or prospective agreement, as in a promissory note, waive the positive statutory exemption so as to render his wages subject? It is contended that under section 10 of the Political Code of 1895, such a waiver is valid and binding. That section reads as follows: 'Laws made for the preservation of public order or good morals can not be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not injure thereby others or affect the public interest.' The exact question, therefore, is whether the exemption of the daily, weekly, or monthly wages of a laborer, from garnishment, is merely such a personal privilege, or thing established 'in his favor,' as may be waived by him by an executory or prospective agreement, or whether it involves the preservation of public order or good morals, or affects the public interest,—in other words, whether such a waiver is contrary to public policy, and therefore void. If such a contract is contrary to public policy, it can not be enforced. Civil Code, §3668.

"Section 10 of the Political Code is a codification of the law as it stood before the original code was adopted, and does not

introduce any new or peculiar statutory rule. In effect, it merely declares what would be the law without it. Does the exemption from garnishment of the daily, weekly, or monthly wages of a laborer involve, or is it based upon, any public policy of this State, or is it merely a personal privilege which may be waived by prospective agreement? There have been many decisions as to who was a laborer within the meaning of the law; and there was no little conflict in them until a general rule was laid down in the case of *Oliver* v. *Macon Hardware Co., 98 Ga.* 249 (25 S. E. 403, 58 Am. St. R. 300), which has since been followed by the Supreme Court of this State. It will therefore be unnecessary to undertake to discuss or reconcile the decisions on this subject; but the point to which I shall address myself is, whether, if a person be conceded to be a laborer within the meaning of the law, the exemption of his daily, weekly, or monthly wages from garnishment involves any question of public policy. In *Caraker* v. *Mathews, 25 Ga.* 574, it is said, 'The family of an overseer is entitled to this subsistence from his hands before any creditor, I care not how meritorious his demand may be. *Women and children must have bread.* . . Right or wrong, the legislature has indicated its policy in this respect. It should not be restricted, when sought to be applied to a class quite as needy, and meritorious too, as others who are confessedly exempt.' This decision had been frequently cited as authority; and while in *Kyle & Co.* v. *Montgomery, 73 Ga.* 343, it was said that the meaning of the terms 'journeyman mechanic' and 'day laborer' was sufficiently enlarged when they were made to embrace the overseer of a plantation, who not only directed the operations of the hands employed, but labored with them, and also clerks employed in stores, the criticism went merely to the question of who fell within the designated class. I nowhere find any reversal or criticism of the statement of the Judge delivering that opinion, as to the public policy involved. In *Claghorn & Cunningham* v. *Saussy, 51 Ga.* 576-7, it is said, 'The object of this statute being for the benefit of the laboring class of small means, should be liberally construed so as to effect the intention of the legislature.'

"On December 7, 1898, an act was passed prohibiting creditors from assigning and transferring, or sending out of this State, claims, accounts, or debts against a resident thereof, for the pur-

pose of having the same collected by proceeding in attachment or by garnishment in another State, with intent to deprive a resident of Georgia of the right to have his wages exempt from garnishment. In this act occurs the following language: 'thereby seeking to evade said law and defeat the *public policy* of this State.' Acts 1898, p. 90. On December 18, 1901, an act was passed to 'make it lawful for any railroad company or other corporation doing business in this State, upon the death of any employee leaving a surviving widow or minor child or children, to pay over whatsoever wages that may be due said employee, not to exceed one hundred dollars, to his widow, or minor child or children, or guardian thereof, without any administration upon his estate, and to exempt said wages to the amount of one hundred dollars from garnishment.' In the body of the act it is said: 'said fund to the amount of one hundred dollars, after the death of said employee, is hereby exempt from any and all processes of garnishment.' Thus again, the legislative purpose to protect wages from garnishment, even after the death of the laborer or employee (for this act is not limited to laborers, unless 'employee' be taken to mean 'laborer') is shown. If the laborer or employee could waive the exemption of his wages from garnishment, how could this act be carried into effect? Acts 1901, p. 60. In *Green* v. *Watson,* 75 *Ga.* 471, it was held that 'where the laborer made the following general waiver in a note, viz, "And I hereby contract and expressly waive the exemption of my wages or salary from the process of garnishment under the laws of Georgia, or exemption of my daily, weekly, monthly, or yearly wages or salary from the operation of the garnishment law, in case this note is not paid promptly at maturity," such waiver was not binding on him, and was void;' and this was put on grounds of public policy. The last paragraph of the opinion in that case will be discussed presently. Here, then, both by the decisions of the Supreme Court and by the direct words of the legislature, the exemption of wages from garnishment is recognized not merely as being a personal privilege, but as involving and constituting a public policy of the State.

"In other States the great weight of authority is to the effect that such a direct statutory exemption is based on public policy and can not be waived by executory or prospective agreement so as to prevent the laborer from claiming his exemption. In Rood

on Garnishment, sec. 86, occurs the following: 'Unless the statute creating the exemption so provides, no valid waiver of its benefits can be made in advance by executory agreement.' The statute of this State creating the exemption does not provide for any waiver of it, and section 10 of the Political Code, which existed long prior to the act of 1876, was merely a codification, and does not modify or limit the terms of the act. In Firmstone *v.* Mack, 49 Pa. St. 387, 393-4 (88 Am. D. 507), it was held that a waiver of 'all and singular the rights, benefits, and privileges of the act of the Assembly which exempts money due laborers for labor done from collection by attachment' was void, as contrary to public policy. In the opinion it is said that to hold otherwise would place temptation before 'weak debtors to beggar their families in behalf of sharp and grasping creditors. . . It is to be observed that the garnishee has rights in the premises, and he is under the act of the Assembly, but is not a party to the agreement which his laborer makes with the creditor. Why should he be annoyed and subjected to costs, his worker hindered, and his hands deprived of their daily bread, by an agreement between others to which he is not a party, and of which he had no notice? Why should such an agreement be made a rule of law to garnishees, instead of a statute which they knew of when they made their business arrangements and employed their laborers, and which they had a right to expect would be administered as written?' In Kneettle *v.* Newcombe, 22 N. Y. 249 (78 Am. Dec. 186), the exemption under consideration was one of property from levy, but it was a direct statutory exemption quite similar in its terms to the exemption of wages from garnishment in this State. The court says: 'Every honest man who contracts a debt expects to pay it, and believes he will be able to do so without having his property sold on execution. No one worthy to be trusted would, therefore, be apt to object to a clause subjecting all his property to levy on execution in case of non-payment. It was against the consequences of such overconfidence, and the readiness of men to make contracts which may deprive them and their families of articles indispensable to their comfort, that the legislature has undertaken to interpose. One object of the legislature was to promote the comfort of families and to protect them against the improvidence of their head.' On page 253 it is said: 'The law

does not permit its process to be used to accomplish ends which its policy forbids, though the parties may, by prospective contract, agree to such use.'

"Counsel for plaintiff in certiorari [Mr. Walter McElreath, of the Atlanta bar] puts his argument strongly when he says in his brief, 'The protection of the family of the debtor, the common benefits flowing to the entire community from the encouragement of persons to engage in laborious occupations, the immunity of industries and large enterprises, dependent upon the employment of labor, from garnishments and from having their labor driven off by garnishments, are within the policy of the law of this State.' While it is impracticable to enter into a detailed discussion of things which may be waived and those which may not be, a few illustrations of the latter class will show that all exemptions are not waivable. A debtor is exempt from arrest or imprisonment for debt in this State. He can not waive that exemption and confer upon his creditor a right to imprison him. An agreement not to take the effect of the bankruptcy laws would hardly be held binding. Although a deed or contract given as security may provide in express terms for a forfeiture in case of non-payment at the time specified, courts of equity frequently grant relief. In Moxley *v.* Ragan, 10 Bush (Ky.), 158 (19 Am. R. 61), it is said, 'The right to plead the statute of limitations is a personal privilege, but will it be contended that an agreement or promise never to plead the statute is binding?' In Curtis *v.* O'Brien, 20 Iowa, 376 (89 Am. D. 543), it is said, "In the case of a judgment creditor applying to the court or its officer for an execution, the court, by its clerk, following the language of the law, says to him, "You may have the execution, but no exempted property is to be sold under it." The creditor, however, says to the court, "I will take your execution, but the debtor and myself have made a law for this case which will control your writ, and make it do what the law says it shall not do." No court will permit parties thus to control its process so as to defeat the statute or render nugatory its most beneficent provisions.

"In regard to exemption of property or homesteads there is some conflict in the decisions, but the weight of authority is in accordance with the rulings above referred to, and some of the cases which seem to hold otherwise will be found to rest on stat-

utory provisions. 28 Am. & Eng. Enc. Law (1st ed.), 575. In Pennsylvania it was held that an exemption of property from levy might be waived, but later the Supreme Court of that State appears to have regretted such decision, and declined to make a similar ruling in regard to waiving exemption of wages from garnishment. See Case *v.* Dunmore, 23 Pa. St. 94; Shelly's Appeal; 36 Pa. St. 373, 380; Firmstone *v.* Mack, supra. See also Mills *v.* Bennett, 94 Tenn. 651 (30 S. W. 748) (involving wages); Carter's admr. *v.* Carter, 20 Fla. 558 (51 Am. R. 618). It is sought to draw an analogy between the waiving of a right to obtain a homestead or exemption under the laws of this State and the waiving of the statutory exemption of wages from garnishment, but the analogy is very imperfect. Prior to the constitution of 1877, it was held in *Stafford, Blalock & Co.* v. *Elliott,* 59 *Ga.* 837, that 'A general waiver of the right of homestead of all the property of a debtor, in esse and to be acquired, in a promissory note, without words which create any lien or describe any particular property, will not estop the debtor from taking a homestead, though he may have owned and possessed the property set apart at the time he gave the note.' In the opinion it is said that 'the policy of the law, as exhibited in the constitution and statutes, is undoubtedly that women and children should have a home set apart out of the father's and husband's property, if he, as the head of the family, would secure it to them.' In *Flanders & Sons* v. *Wells,* 61 *Ga.* 195, it was held that 'Where, in 1876, a debtor mortgaged two mules, waiving expressly all right of exemption, and afterwards disposed of one before the setting apart of either as exempt, the wife of the debtor can not protect the other from levy and sale under the mortgage fi. fa. by having it set apart under section 2040 of the Code,' and this followed the decision in *Simmons* v. *Anderson,* 56 *Ga.* 53. So that, prior to the constitution of 1877, a general waiver was not good, but a waiver contained in a mortgage on specific property was valid.

"The difference, however, between the right to have a homestead or exemption set apart in property and the statutory exemption of a laborer's wages from garnishment is clear. The constitutional provisions and statutes in regard to homestead and exemption of property from levy in this State did not complete the

exemption *proprio vigore.* They confer upon the person entitled to have exemptions set apart the right to obtain the same by complying with certain statutory requirements. To do so or not is optional with the owner of the ·property. He may comply ˙with the statutory requirements and exempt certain selected property, or he may decline to do so and allow it to remain unexempted, and even his wife can not compel him to obtain an exemption against his will. *Davenport* v. *Alston,* 14 *Ga.* 271-5; *Simmons* v. *Anderson,* 56 *Ga.* 53; *Bowen* v. *Bowen,* 55 *Ga.* 182. Under the present constitution waivers of homestead or exemption rights, except to a limited extent, are provided for. The statute exempting wages from garnishment requires no action on the part of the laborer, such as filing or making application to the ordinary, or the taking of other steps similar to those required to obtain a homestead or exemption. This difference is recognized by Chief Justice Jackson in *Green* v. *Watson,* 75 *Ga.* 473 (45 Am. R. 479), when he says, 'There being nothing in the constitution of 1877 permitting the waiver of the garnishment law, the principle then ruled [referring to the case of *Stafford, Blalock & Co.* v. *Elliott*] covers *a fortiori* this case; for if the debtor could not waive a right which required an application to the ordinary, or, in other words, which required suit by him to assert and set apart homestead, much less can he waive a right which he need not sue for, but, standing on the law which has already set apart for him all his wages, he need do nothing but defend by citing that law.' The last clause in the opinion in the case referred to is greatly relied upon by counsel for the defendant in certiorari. It reads as follows: 'Whether any special waiver of these laws upon specific wages in a certain employment and for a certain time, by specific orders on employers contained in such specific waiver, would be good, we do not decide, it not being necessary to do so, because the ruling as it stands meets the case made, and "sufficient unto the day is the evil thereof." ' The court distinctly refused to decide whether such waiver would be good or not, and therefore, at most, counsel for defendant in certiorari can draw no further comfort from the statement than the negative inference that, because the court did not decide the point, they might have decided it in his favor. This is, at best, weak authority.

"The Chief Justice rendering that decision closes with the

Biblical quotation, 'Sufficient unto the day is the evil thereof.' The day has now arrived and surely the 'evil thereof' is amply sufficient. A money lender has prepared forms in which, relying upon this paragraph of the decision, he seeks to subject the wages of a laborer to garnishment in spite of the statute which declares that he shall not do so. Two cases of a similar character are already before me. How many others are to follow, the future will determine. In regard to what was said in this paragraph of the opinion, two things occur to my mind. In the first place, if the statutory exemption of a laborer's wages from garnishment involves a public policy of the State, and a general waiver is contrary to public policy, as has been held by the Supreme Court, I am unable to see how a waiver *less* than general or universal would be in accord with public policy. In this case the waiver relied on affects 'all exemption from garnishment of my wages to be earned in the employment of the same, or the Southern Railway Company, for the months of the years 1901 and 1902.' Now a laborer or his family may starve quite as effectually in two years as in any other time. If, on a twelve-dollar debt, the right of exemption from garnishment of the wages of a laborer for two years can be waived, why not for five, ten, or twenty, or any other number of years? If I have succeeded in showing that such waivers are obnoxious to public policy, how are they any the less so because some number of years is stated? If it is contrary to public policy generally to waive exemption from garnishment of the wages of a laborer, but it is not so contrary to public policy to waive the exemption for one year or two years, where can the line of demarcation be drawn? Can a court lay down, as a rule applicable to all cases of laborers, that they may lawfully waive the exemption for a certain number of days, or a certain number of months, or a certain number of years, but beyond that they are prohibited from waiving? Or can the courts take up each individual laborer and undertake to say that sometimes he may lawfully waive the exemption and sometimes he may not? If so, when could he waive and when could he not? To follow the statute is a plain and simple procedure. To attempt to make exceptions to it by construction would be more like legislation than adjudication. If the legislature desires to permit waivers in such a case, that is for them to say. . . Upon a consideration of the

entire case, I am of opinion that the waiver was invalid and did not prevent Mills from claiming his wages as exempt, and the verdict of the jury in the justice's court finding to the contrary was erroneous."

We shall only add that on August 15, 1904, since the rendition of the above opinion, the General Assembly passed the act forbidding the assignment of unearned wages, which is further indicative of the public policy of this State upon the question at bar. See Acts 1904, pp. 81, 84.        *Judgment affirmed.*