### 2790.  MILLER v. ROBERTS.

1. One party to a contract can not rescind for fraud while retaining the benefits of the contract.  In order to entitle him to rescind, he must promptly upon discovery of the fraud restore, or offer to restore, to the other party whatever he has received by virtue of the contract.

2. When the means of knowledge are at hand and equally available to both parties to a contract of sale, if the purchaser does not avail himself of these means, he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller.

3. Where a promissory note contains an obligation to pay attorney's fees, the statutory notice which the plaintiff is required to give to the defendant as a condition precedent to his right to recover attorney's fees can not be waived in the note, and the attempt to waive it therein is unenforceable and of no effect.  (HILL, C. J., dissents as to this ruling.)

DECIDED JULY 25, 1911.

Complaint; from city court of Blakely—Judge Jordan.  June 20, 1910.

*W. I. Geer,* for plaintiff.

*W. F. Weaver,* for defendant.

HILL, C. J.  This was a suit on a promissory note.  A verdict for the defendant was rendered, and the plaintiff's motion for a new trial was overruled.

The consideration of the note was the exclusive right to sell, in the counties of Early, Decatur, and Miller, "a pinless clothes-line," under patent rights issued by the government of the United States to the seller.  The defendant pleaded that when the sale was made, the plaintiff represented to him that the only cost connected with the sale of the pinless clothes-line would be the purchase price represented by the note sued upon, that none of the towns in the three counties of Early, Decatur, and Miller required any license or special business tax for the sale of said clothes-line, and that, relying upon the truth of this statement, the purchase was made and the note given.  This representation the defendant "found to be absolutely without truth, and, on account of said fraudulent representation, the patent right became and instantly was, upon the defendant's being required to pay a license to sell pinless clothes-lines, worthless and useless to the defendant, and he immediately offered to return said patent right to the plaintiff, which offer was refused."  Neither the note nor the contract of sale contained any representation on the subject of the payment of a license as alleged by the plea, and the

plaintiff testified that no such statement was ever made by him to the defendant.

The defendant, in support of his plea, testified that he had sold about $100 worth of the pinless clothes-lines covered by his contract, in the counties mentioned, but that on reaching Bainbridge, in Decatur county, he was informed that a license would be required before he could sell the line in that city, and, on inquiry, he found that such was the case in the other towns in the county. He introduced in evidence an ordinance of the Town of Blakely requiring the payment of $25 as a license before he would have the right to sell in that town the pinless clothes-line, and he testified that when he found that this was required, he went to the plaintiff and asked that he either pay the license or rescind the contract.

1. The evidence in behalf of the defendant did not make a case which, under the law, would entitle him to have the contract rescinded for fraud. Conceding that a fraudulent representation was made, and that upon its discovery the defendant promptly offered to rescind, he did not offer to restore to the plaintiff any of the proceeds which he had realized from sales under his contract of purchase, and which he testified amounted to at least $100. Certainly he was not entitled to rescind the contract for fraud, when, according to his own statement, he had received a benefit out of the contract greater than the consideration for which the contract had been made.

2. Nor do we think the defense of deceit or fraud was established. This court is thoroughly committed to a high standard of good faith in the making of contracts, and either party to a contract is bound to disclose to the other any knowledge he may have of a material fact which may affect the value of the subject-matter or consideration of the contract. *Marietta Fertilizer Co.* v. *Beckwith,* 4 *Ga. App.* 249 (61 S. E. 149). But it is well settled that the law does not afford relief to one who suffers by not using the ordinary means of information that may be at hand, whether his neglect be due to indifference or to credulity. Whether the towns in the three counties mentioned required the payment of a license by the seller of pinless clothes-lines was a fact which could be found out by the defendant as easily as by the plaintiff. In other words, the information was equally available to both parties. It is a

matter of general knowledge that most towns and cities do require licenses from vendors of such articles.

The assertion by the plaintiff (assuming that he made it) that no license was required by any of the towns in any of those three counties was simply the assertion of a fact, the truth of which could have easily been inquired into by the defendant; and the defendant was bound to make such inquiry, and would not be authorized to rescind the contract for any damage resulting from a misrepresentation which, by the exercise of ordinary and reasonable diligence, he could have discovered was a misrepresentation. *Green* v. *Bryant, 2 Ga.* 66. As was tersely said by Lord Kenyon, in the old case of Pasley *v.* Freeman, 3 Term Reports, 64, "Undoubtedly, where the common caution and prudence of man are sufficient to guard him, the law will not protect him in his negligence."

But to sum the whole matter up in a nutshell: Neither the law, nor equity, nor good conscience will allow one party to a contract to rescind the contract for alleged fraud, or will on that ground relieve him from a compliance with his contract, where, according to his own statement, he has received from the contract a pecuniary benefit greater in amount than the consideration of the contract, and retains in his possession the fruits of the contract, and makes no offer to make an equitable adjustment thereof with the plaintiff. We do not see how the defendant can be relieved of the obligations of his contract while retaining the benefits thereof.

3. The note sued on in this case contained an agreement to pay "all costs of collection, including 10 per cent. on principal and interest as attorney's fees, if collected by law or through an attorney at law," and contained also a provision as follows: "The makers, indorsers and sureties on this note waive the ten days notice that is now required by law to be given as to when, where, and in what court the owner will proceed to collect or sue this note, and agree that if the owner places this note in the hands of an attorney for collection he is to collect ten per cent. upon the principal and interest as attorney's fees, and the said ten per cent. is hereby made a part of the principal."

The court instructed the jury that this attempt to waive the notice which the statute makes a condition precedent to the recovery of attorney's fees was unenforceable and of no effect, and

to this instruction the plaintiff excepts. While the writer is of the opinion that this instruction was erroneous, the other members of the court are of the view that the exception is not well taken, and the writer is authorized to state the following as the opinion of the majority of the court:

The Civil Code (1910), § 4252, provides: "Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, are void, and no court shall enforce such agreement to pay attorney's fees, unless the debtor shall fail to pay such debt on or before the return day of the court to which suit is brought for the collection of the same: provided, the holder of the obligation sued upon, his agent, or attorney notifies the defendant in writing, ten days before suit is brought, of his intention to bring suit, and also the term of the court to which suit will be brought."

Prior to the act of 1890, known as the Twitty bill (codified into section 3667 of the Civil Code of 1895), there was nothing in our law or public policy which forbade the maker of a note or other obligation from promising to pay attorney's fees in addition to the debt. By the Twitty bill it was provided that obligations to pay attorney's fees were void and unenforceable by the courts, unless the defendant, upon being sued, filed a plea which he failed to sustain. This declared a new public policy in this State as to obligations to pay attorney's fees in addition to the principal and interest due upon an indebtedness. In 1900 this law was amended so as to make it read as it appears in the Code of 1910, § 4252, but the same policy in general outline was preserved; that policy being that such obligations should not be enforced, unless the creditor was in fact put to the necessity of employing an attorney to collect the debt through suit. The law declaring this policy was so shaped that to the creditor himself should not be left the absolute determination of the time when this necessity to employ counsel was upon him. The legislative mind seemed to contemplate that the creditor would be afforded full measure of protection in this respect, if the law provided a means whereby he could employ the attorney on what is called the return day of the court (that is, the last day on which suit may be filed, as respects a particular term), so that the present law on the subject does not allow the creditor to collect attorney's fees, though stipulated for

in the note, unless he gives the debtor 10 days notice of his intention to file suit, informing him as to the court in which it will be brought, and of the term to which it is to be brought, and if the debtor pays up before the return day of the court arrives, or before the suit is filed upon the return day itself, the creditor can not, even if the notice has been given, enforce the obligation to pay the attorney's fees.

It may be said, therefore, that the declared public policy of this State on this subject is that obligations to pay attorney's fees in addition to the principal and interest stipulated for in the instrument creating the indebtedness are to be wholly void and unenforceable, unless the debtor by his act of not paying the debt before the return day, after he has been given timely notice, puts the creditor to the necessity of hiring an attorney. If the provision in the statute as to the giving of the notice were merely something which the law had established in favor of the debtor, and not involving any public interest or public policy, the debtor would undoubtedly have the right to waive it, under the Civil Code (1910), § 10; but we understand the rule to be that, whereever a provision of law is made for the enforcement of some public policy of the State, no person will be allowed to waive that provision, though he himself be the immediate beneficiary.

The welfare of the State itself frequently demands that the law-making power shall enact statutes and declare public policies for the purpose of protecting citizens from hard contractual exactions or stipulations against which they might naturally be expected to protect themselves, but against which, on account of certain inherent weaknesses common to many classes of the people, they do not ordinarily take care to protect themselves; and where such safeguards have been erected the courts will not allow the parties to contract against the enforcement of the policy declared by the law. Instances of such legislation are familiar, the debtor classes being perhaps the most frequent beneficiaries; for example, the laws against taking usury, the law which prohibits a mortgagor from waiving his equity of redemption, the law against the enforcement of contractual penalties, etc. It is a familiar notion, often given expression in our jurisprudence, that it is one of the objects of the law to prevent debtors, urged by the pressure of the necessity of securing credit, or money, or extension of indebtedness,

from yielding to such unjust or unreasonable exactions as a hard creditor may see fit to make.

So as to the present matter, the law, recognizing that many debtors, pressed by their necessity, would, in order to get the money, credit, or extension which they desired, be willing to contract to pay the creditor attorney's fees in addition to principal and interest, whether the creditor was ever put to the necessity of using the attorney or not, stepped in and declared, as a matter of public policy, that such an obligation should be unenforceable, unless the necessity arose, just as it has declared, upon a similar consideration, that a promise to pay more than 8 per cent. interest is void. If the courts should enforce a waiver, such as the one here presented, made contemporaneously with the obligation to pay the attorney's fees, the whole policy in the law could easily be avoided in all cases by the smallest amount of designing. A debtor, willing to promise to pay the attorney's fees, would make no quibble over waiving the statutory notice. If this court should hold this waiver to be valid, it would be but a short while before it would be usual for all standard, printed forms of notes to contain a similar provision, and the law would be a dead letter.

There is nothing in what is here held which would prevent a debtor, after his note had matured, or even when it was about to mature, from waiving formal service of the notice, if he was in fact informed that suit for the indebtedness would be brought to a designated term of a particular court; in other words, there is nothing in the policy of the law which would forbid him to acknowledge service of a notice, or even to waive service, if he was in fact given notice of the intention to sue, and given the opportunity contemplated by the statute of paying the debt before the return day; but the majority of the court does not think that the waiver can be made as a part of the original contract, or that the spirit of the law can be violated by the stipulations of the parties.

The writer thinks that the statute in question was made solely for the benefit of the makers of the obligations therein described, and the requirement that notice must be given 10 days before suit is a personal privilege, which can be waived by the defendant, and that when he does so in the note he is bound by the waiver, and can not be heard subsequently to repudiate it. Defendants are authorized to waive process, as well as the time of filing suit,

and to consent that a judgment may be taken at an earlier term than the law would otherwise authorize. Civil Code (1910), § 5561. Section 5562 is mandatory in its terms. It declares that the petition shall be filed at least twenty days before the term to which it is returnable. This waiver is analogous to the statutory notice now under consideration, and yet the Supreme Court has held that where the defendant waives, in writing, the requirement, as between himself and the plaintiff, the waiver is binding, in the absence of fraud, and the defendant can not subsequently be heard to object that the petition was not filed 20 days before the term of the court to which the suit was returnable. *Steadman v. Simmons*, 39 *Ga.* 591. Where the maker of an obligation makes a contract to pay the 10 per cent. attorney's fees, and the statutory notice is not given as required, can it be doubted that the defendant would have the right, where suit is brought for the recovery of attorney's fees, to come into court and consent that a judgment be rendered against him for the attorney's fees, although the notice had not been given? And what he can do after suit is filed it would seem he could do previously. As before stated, I think the notice in question is solely a personal right or privilege.

Section 10 of the Civil Code provides as follows: "Laws made for the preservation of public order or good morals can not be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." The statute now under discussion was not made for the preservation of public order or good morals, and clearly, being enacted in favor of defendants who are sued on obligations wherein they agree to pay attorney's fees, may be waived by them, unless such waiver injures others or affects the public interest. The public has no interest in a contract of this character; and none, except those who are parties to the contract, can possibly be injured by any waiver relating thereto.

Nor do I think that contracts which provide for the collection of attorney's fees from the defendant are against the public policy of this State. Prior to the act of 1891, commonly known as the Twitty bill, there was no legislation on this subject; the matter being purely one of individual contract. The act of 1891 first de-

clared that these contracts were "absolutely void," and could not be enforced by the courts, unless the defendant filed a plea or pleas which he failed to sustain. Acts 1891, p. 221. The contract, although declared to be absolutely void, was not in fact absolutely void. It depended upon whether the plea or pleas filed to the suit were sustained, and if the plea or pleas were not sustained the contract was enforceable and the fees were collectible.

The act of 1900 (Acts of 1900, p. 53) struck out the words in the act of 1891, "unless a plea or pleas be filed by the defendant and not sustained," and inserted in lieu thereof the following words, to wit: "unless the debtor shall fail to pay such debt on or before the return day of the court to which suit is brought for the collection of the same: provided the holder of the obligation sued upon, his agent or attorney notifies the defendant in writing ten days before suit is brought, of his intention to bring suit, and also the term of the court to which suit will be brought." The contract to pay fees, although declared to be void, under this amendment was not absolutely void, but only voidable, for notwithstanding the language of the statute, which declares that the contract is absolutely void, the contract is valid where the debtor fails to pay the debt before the return day of the court to which suit is brought, provided that the statutory notice is given to the defendant. The contract to pay attorney's fees, therefore, is not one in violation of any law of this State, or contrary to the public policy of this State, and is entirely in harmony with the law and public policy of the State, but must be enforced in accordance with the requirements of the statute.

The agreement to waive the statutory notice is not analogous to a contract to waive the exemption of wages from process of garnishment, or, independently of statutory or constitutional provision, the waiver of a homestead exemption. In the absence of any such statutory or constitutional provision, it has been uniformly held by the courts of this country that any agreement waiving the right to claim the exemption of property from execution, or from garnishment process, is against public policy, and is void. Freeman on Executions (3d ed.), § 216. This class of exemptions applies to heads of families or to laborers who depend for their support upon their daily wages, and the benevolent purpose of such legislation is to protect dependent families or laborers. Even

as to homestead exemptions in this State, there is an express provision allowing waiver of this exemption down to a certain limit.   In the absence of such a provision, it is clear that the waiver of homestead exemption would not be upheld by the court.   In the case of *Traders' Investment Co.* v. *Macon Ry. Co.*, 3 Ga. App. 135 (59 S. E. 454), this court held that a contract, either specific or general, by which journeymen mechanics and day laborers, as debtors, attempt to waive the exemption of their wages from the process of garnishment, is not enforceable, adopting as the decision of the court a learned opinion by Associate Justice Lumpkin of the Supreme Court, while on the circuit bench.   In this opinion of Judge Lumpkin it will be seen that he holds that these waivers are contrary to the public policy of the State, and are not valid, because they affect injuriously the rights of those who are dependent upon the laborer for support.

Looking at the subject now under discussion in its broadest aspect, I think that it is against the inherent right of individuals under a free government to curtail in any respect their absolute liberty of contract, unless such contract is against the declared policy of the State, or affects in some way injuriously the rights of others, or the public interest; and a statute made solely for the benefit of the individual, and limited to his personal rights, can be waived by him; and, when waived in writing, the waiver is binding and enforceable.                    *Judgment reversed.*